UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
BUILDING SERVICE 32BJ HEALTH FUND and
BUILDING SERVICE 32BJ THOMAS SHORTMAN
TRAINING, SCHOLARSHIP AND SAFETY FUND,

                                                                    Civil. Action: 18-cv-2280

                                        Plaintiffs,

        -against-

                                                              **COMPLAINT**

RED COATS, INC.

                                        Defendant.
------------------------------------------------------------------------X

        Building Service 32BJ Health Fund ("Health Fund") and the Building Service 32BJ Thomas Shortman Training, Scholarship and Safety Fund ("Training Fund"), collectively referred to herein as the "Funds", as and for their Complaint against Red Coats Inc. ("Defendant"), respectfully allege as follows:

### NATURE OF ACTION

        1.       This is a civil action brought pursuant to Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act, as amended (29 U.S.C. §§ 1132(a)(3), 1145), (hereinafter referred to as "ERISA") and Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C. § 185) (hereinafter referred to as the "Taft-Hartley Act"), by an employee welfare benefit fund and an employee supplemental savings fund, for injunctive and other equitable relief under ERISA to secure performance by an employer of specific statutory and contractual obligations to permit and cooperate in the conduct of audits of the books and records of Defendant. This Complaint alleges that by refusing to submit the required reports to the Funds when required as per the Funds' rules and regulations, Defendant violated its collective bargaining agreement, the trust agreements of the Funds, and ERISA.

## JURISDICTION

2.  Jurisdiction of this Court is invoked under the following statutes:

    (a) Section 502(e)(1) and (f) of ERISA (29 U.S.C. § 1132(e)(1) and (f);

    (b) Section 301 of the Taft-Hartley Act (29 U.S.C. Section 185);

    (c) 28 U.S.C. Section 1331 (federal question); and

    (d) 28 U.S.C. Section 1337 (civil actions arising under an Act of Congress regulating commerce).

## VENUE

3.  Venue properly lies in this district under Section 502(e)(2) of ERISA (29 U.S.C. § 1132 (e)(2)). Service of process may be made on Defendant in any other district in which it may be found, pursuant to Section 502(e)(2) of E.R.I.S.A. (29 U.S.C. § 1132(e)(2)).

## PARTIES

4.  The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Section 302(c)(5) of the Taft-Hartley Act (29 U.S.C. § 186(c)(5)). The Funds are employee benefit plans within the meaning of Sections 3(2), 3(3) and 502(d)(1) of E.R.I.S.A. (29 U.S.C. § 1002(2),(3), and 1132(d)(1)), and multi-employer plans within the meaning of Sections 3(37) and 515 of E.RI.S.A. (29 U.S.C. §§ 1002(37) and 1145). The Funds are authorized to maintain suit as an independent legal entity under Section 502(d)(1) of ERISA (29 U.S.C. § 1132(d)(1)). The purpose of the Funds are, *inter alia*, to receive contributions from employers who are parties to collective bargaining agreements with Service Employees International Union, Local 32BJ ("Union"), to invest and maintain those monies, and to distribute health benefits and

training, scholarship and safety benefits to those employees eligible to receive them. The Funds maintain their office and are administered at 25 West 18th Street, New York, New York 10011, in the City, County, and State of New York.

5. The Union is a labor organization within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185) which represents employees in an industry affecting commerce as defined in Section 501 of the Taft-Hartley Act (29 U.S.C. § 142) and Section 3(4) of E.R.I.S.A. (29 U.S.C. § 1002(4)). The Union maintains its offices and is administered at 25 West 18th Street, New York, New York 10011, in the City, County, and State of New York.

6. Upon information and belief, at all times material hereto Defendant was, and continues to be, a Maryland for-profit corporation having a principal place of business at 4520 East-West Highway, Suite 200, Bethesda, Maryland 20814 and doing business as an employer within the meaning of Sections 3(5) and 515 of E.R.I.S.A. (29 U.S.C. §§ 1002(5) and 1145), and was and is an employer in an industry affecting commerce within the meaning of Section 301 of the Taft-Hartley Act (29 U.S.C. § 185).

7. Defendant is party to a collective bargaining agreement (the "Agreement") with the Union wherein, *inter alia*, Defendant became obligated to pay and submit the required monetary contributions and reports to the Funds, for Defendant's employees within the unit set forth in the Agreement with the Union.

8. As part of their fiduciary to the Funds, the Trustees are required to perform payroll compliance audits to ensure that contributing employers are accurately designating employees and making the contributions as required by ERISA and the Agreement.

9. In Article 4, Section 4.3 of the Agreement, Defendant agreed to the following:

> 4.3 By agreeing to make the required payments to the Funds, the Employer hereby adopts and shall be bound by the

Agreement and Declaration of Trust as it may be amended and the rules and regulations adopted or hereafter adopted by the Trustees of each Fund in connection with the provision and administration of benefits and the collection of contributions. The Trustees of the Funds shall make such amendments to the Trust Agreements, and shall adopt such regulations as may be required to conform to applicable law.

10. The Health Fund Agreement and Declaration of Trust ("Health Trust Agreement") provides in pertinent part:

> D) ARTICLE VIII
> OBLIGATIONS OF EMPLOYERS
> Section 1: Acceptance of Trust Agreement. Each Employer, upon the signing of a Collective Bargaining Agreement or Participation Agreement, or upon remitting contributions to the Trust Fund, shall be deemed thereby to have agreed to all provisions of this Trust Agreement, to such amendments thereto as the Trustees may adopt pursuant to Article IX, and to all rules and regulations established by the Trustees…

11. The Training Fund has an identical provision in its Agreement and Declaration of Trust (both trust agreements referred to herein as the "Trust Agreements").

12. The Trust Agreements state the following under Employer Obligations:

> <u>Furnishing Requested Information</u>. The Trustees may call upon the Employers and/or the Union to furnish to the Trustees such information and reports as they may require in the performance of their duties under this Trust Agreement and the Employers and/or Union shall furnish the same when so requested. The Trustees or their representatives, duly authorized in writing, shall have the right to audit, examine and make copies of all or any part of the books and records, cash books, ledgers, contracts, tax returns or reports, and any other book or record which the Trustees deem necessary or desirable in connection with the proper administration of the Trust Fund. In any case that arbitration or legal action becomes necessary to enforce an Employer's obligation to submit to an audit or otherwise provide reports or requested information, the Trustees shall also be entitled to recover any and all expenses of that enforcement action, including, but not limited to, audit fees, counsel fees, arbitration costs and fees, and court

expenses.

13. Defendant agreed to be bound by the rules and procedures of the Funds, which state in part the following:

> IV. Compliance Audit Program
>
> ...
>
> B. Employers' duty to cooperate with auditor. Employers are required, pursuant to the Trust Agreements and their collective bargaining agreements, to cooperate with the Funds' auditor by promptly providing all records that are requested to permit the auditors to make a determination regarding the accuracy, completeness and timeliness of the employer's reports and remittances to the Funds.

14. A payroll compliance audit is essential to allow the Funds to determine what Defendant owes on its obligations under the Agreement. Absent Defendant's compliance with the audit, the Funds have no remedy allowing them to fulfill their obligations under ERISA, the Trust Agreements and the collective bargaining agreements.

15. Despite repeated demands, Defendant has failed to provide all of the documents necessary to allow the Funds' auditor to perform and complete the required payroll compliance audit.

16. By letter dated February 23, 2017, the auditor for the Funds, in accordance with the Agreement and the rules and procedures, sent a letter to Defendant requesting that Defendant contact the auditor to schedule a payroll compliance audit (the "Audit").

17. The Audit is for the time period June 30, 2013 through the present date.

18. Defendant refused to provide the required information, instead offering to disclose only the information regarding employees Defendant self-designated as covered by the Agreement and entitled to contributions.

19. The Funds' auditor notified the Defendant that documents regarding non-covered employees are needed to ensure that Defendant was not improperly designating covered employees as non-covered and thereby shirking its obligations under ERISA and the Agreement.

20. Defendant refused to provide the required documentation, claiming at the time that Defendant was concerned about disclosing confidential information of its employees, specifically their social security numbers (SSN).

21. On November 6, 2017, the Funds' auditor sent a second request asking that Defendant allow for an audit to be completed.

22. On or about November 16, 2017, the Funds offered to allow Defendant to redact all but the last four digits of the SSN from the documentation sought by the auditor. The Funds were informed by Defendant that this would alleviate any confidentiality concerns of Defendant.

23. In further consideration of Defendant's purported concerns, on December 1, 2017, the Funds' auditor and Defendant entered into a confidentiality agreement confirming that the information sought would be used solely to ensure that Employer met its obligations to the Funds.

24. At that time, Defendant agreed to provide all documents necessary for the completion of the audit.

25. Despite the repeated demands and good faith steps taken by the auditor and the Funds, Defendant failed to provide its books and records.

26. On December 11, 2017, Defendant indicated that it was "working on changing the SSN to last 4 digits."

27. On January 16, 2018, the Funds' auditor asked for an update regarding delivery of the required information.

28. Defendant responded on January 16, 2018, stating that "the SSN issue has been

resolved" and blamed the delay on "various office illness issues for the past couple weeks."

29.     On March 6, 2018, nearly two months later, the Funds' auditor again contacted Defendant after no documentation was received.

30.     On March 9, 2018, Defendant responded by stating that they were "50% there" in compiling payroll information for covered employees. In the e-mail, Defendant suggested that they had repudiated their agreement to provide information for employees Defendant had self-reported as covered as well as non-covered.

31.     On March 9, 2018, counsel for the Funds' contacted Defendant and stated the following:

> Blaine-
> Just wanted to make sure we are all on the same page, are you providing the full payrolls or filtering out employees who for some reason (including that employees may be working at non-union locations) you may not have reported to the Fund? The whole point of conducting payroll audits is to make sure all those who should be reported are reported.

32.     On March 9, 2018, Defendant confirmed that Defendnat would only be "providing data on employees in the bargaining unit." Put another way, Defendant retracted its earlier commitment and stated that it would only provide information on employees Defendant had self-designated as being in the bargaining unit.

33.     Counsel for the Funds responded to Defendant on March 9, 2018:

> That's not what we discussed. We agreed that you would submit the documentation necessary to conduct the audit. It sounds like you are simply deleting employees you didn't report to the Fund on the grounds that they're not in the bargaining unit. That's for the auditor to decide in the first instance and ultimately, perhaps an arbitrator or court if there is a disagreement. If you're going to submit nothing but "filtered" payrolls we will have to seek a judicial resolution.

34.     Thus, Defendant refused to allow the Funds' auditor to review the requested

documentation.

35. Nearly thirteen months has passed since Defendant was provided notice of the payroll compliance audit. Nevertheless, to date no documentation has been provided.

36. Upon information and belief, Defendant has knowingly failed to report employees to the Funds that are covered by the Agreement and is failing to cooperate with the payroll compliance audit in an attempt to shirk its responsibilities under ERISA, the Agreement, and the Trust Agreements.

## AS AND FOR A FIRST CLAIM FOR RELIEF

## (FUNDS DEMAND FOR AN ORDER DIRECTING DEFENDANT TO PERMIT AN AUDIT OF DEFENDANT'S BOOKS AND RECORDS

37. The Funds repeat and reallege each and every allegation contained in paragraphs 1 through 36 of this Complaint as if set forth fully therein.

38. Defendant is obligated, pursuant to the terms of the Agreement and ERISA, to permit and cooperate in the conducting of audits of the books and records of Defendant by the Funds.

39. At all times material herein, Defendant has failed and refused to cooperate with the audit of its books and records.

40. Absent an injunction from this Court, the Funds have no way of knowing if Defendant is in compliance with the Agreement and ERISA.

41. The Funds will be irreparably harmed without an injunction. Plaintiffs will lose Defendant's contributions while at the same time potentially having to pay out benefits to Defendant's employees. Additionally, covered employees not reported by Defendant will continue not receiving benefits at all.

42. Accordingly, pursuant to the terms and conditions of the Agreement and ERISA,

the Funds demand an Order directing Defendant to permit and cooperate with the Funds and/or their designated representatives in the conduct of the aforesaid audit of Defendant's books and records.

WHEREFORE, Plaintiff Funds demand judgment:

a. for an Order requiring Defendant to permit and cooperate in the conduct of an audit by the Funds' auditor of the books and records of the Defendant, for the period June 30, 2013 through the present date;

b. awarding the Funds the audit fees incurred in attempting to perform the payroll compliance audit;

c. awarding the Funds the audit fees that will be incurred in actually performing the payroll compliance audit;

d. reasonable attorney's fees and costs of the action pursuant to ERISA;

e. for such other and further relief as the Court deems just and appropriate.

Dated: Fort Lee, New Jersey
March 15, 2018

Raab, Sturm & Ganchrow, LLP

By: _____
Ira A. Sturm (IS-2042)
Attorneys for Plaintiffs Funds
2125 Center Avenue
Suite 100
Fort Lee, New Jersey
(Tel) 201-292-0150
(Fax) 201-292-0152